IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES FIDELITY AND GUARANTY COMPANY,** | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) No. 07 C 3179<br>) |
| **SHORENSTEIN REALTY SERVICES, LP; SHORENSTEIN MANAGEMENT, INC.; SHORENSTEIN COMPANY, LLC; SRI MICHIGAN AVENUE VENTURE, LLC; SRI MICHIGAN AVENUE MANAGEMENT, INC.; 175 EAST DELAWARE PLACE HOMEOWNERS ASSOCIATION,** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**MEMORANDUM OPINION AND ORDER**

This is a declaratory judgment action arising out of an incident that occurred during a construction project at the John Hancock Center (the "Hancock Center") in Chicago. On March 9, 2002, scaffolding fell, injuring and killing several people. Numerous lawsuits were filed by the injured persons and by the administrators of the estates of those killed during the incident. Those lawsuits have all been settled. Plaintiff United States Fidelity and Guaranty Company ("USF&G") filed its complaint against defendants Shorenstein Realty Services, LP, Shorenstein Management, Inc., Shorenstein Company, LLC, SRI Michigan Avenue Venture, LLC, SRI Michigan Avenue Management, Inc. (collectively "Shorenstein"), and 175 East Delaware Place Homeowners Association ("HOA"), seeking

a declaration that it did not have a duty to defend or indemnify defendants, under a commercial general liability insurance policy issued to a non-party, for the underlying lawsuits filed as a result of the scaffolding incident. Plaintiff moves for summary judgment pursuant to Fed. R. Civ. P. 56. For the following reasons, the motion is denied.

I.

Summary judgment is appropriate where the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). I must construe all facts in the light most favorable to the non-movant and draw all justifiable inferences in favor of that party. *See id.* at 255.

II.

In the spring of 2000, as part of a construction project at the Hancock Center, defendants Shorenstein and HOA, joint owners of the building, entered into various contracts, including a written construction contract with third-party Eckland Consultants, Inc. ("Eckland"). Shorenstein's contract with Eckland required Eckland to procure insurance and name Shorenstein and HOA as additional insureds for the duration of the Hancock Center project and for

2

some period of time thereafter. Plaintiff issued an insurance policy and subsequent renewals of that policy to Eckland in connection with the Hancock Center project, including a renewal policy effective January 1, 2002 through January 1, 2003. Certificates of insurance evidencing defendants' additional insured status under the policy issued on March 15, 2002 and April 9, 2002.

The 2002-2003 policy was endorsed with a Broadened Liability Coverage endorsement (the "Broadened Endorsement"), which included a provision for "additional insureds."[1] The pertinent portion of the Broadened Endorsement reads as follows:

> 3. The following is added to Paragraph 2. of Section II-WHO IS AN INSURED:
>
> I. If you are required to add another person or organization as an insured under this policy by a written work contract or agreement which is in effect during the policy period and a certificate of insurance has been issued listing that person or organization as an Additional Insured, that person or organization is an insured. Such person or organization is referred to in this Coverage Part as an Additional Insured.

III.

Under Illinois law,[2] the interpretation of an insurance policy is a question of law. *Illinois Sch. Dist. Agency v. Pacific Ins. Co., Ltd.*, 471 F.3d 714, 719 (7th Cir. 2006) (citing *Zurich Ins.*

---

[1] The policy also included a Blanket Additional Insured endorsement with slightly different language. The parties focus their arguments on the Broadened Endorsement.

[2] The parties agree Illinois law is applicable.

3

*Co. v. Walsh Constr. Co. of Ill., Inc.,* 816 N.E.2d 801, 805 (Ill.App.Ct. 2004)). An insurance policy is treated the same as any other contract and the same rules of construction apply. *Geschke v. Air Force Ass'n,* 425 F.3d 337, 342 (7th Cir. 2005). Where words in an insurance policy are unambiguous, I give them their plain and ordinary meaning. *See Utility Audit, Inc. v. Horace Mann Serv. Corp.,* 383 F.3d 683, 687 (7th Cir. 2004) (citing *Trade Ctr. v. Dominick's Finer Foods,* 711 N.E.2d 333, 335 (Ill.App.Ct. 1999)). However, insurance policies are issued under factual circumstances and should not be interpreted in a vacuum. *Granite State Ins. Co. v. Degerlia*, 925 F.2d 189, 192 (7th Cir. 1991).

Plaintiff argues that defendants do not qualify as additional insureds under the 2002-2003 policy because certificates of insurance acknowledging their insured status for the 2002-2003 policy year were not requested or issued until after the March 9, 2002 incident. Plaintiff suggests that the endorsement language "a certificate of insurance has been issued," unambiguously means a party is not an additional insured until the issue date of the certificate of insurance. Defendants argue that certificates issued under earlier related policies for the same construction project and/or those that "have been issued" during the 2002-2003 policy year satisfy any purported certificate requirement.

4

Plaintiff cites *Cincinnati Ins. Co. v. Gateway Const. Co. Inc.*, 865 N.E.2d 395 (Ill.App.Ct. 2007), in support of its argument. In that case, the court found the defendant subcontractor was not an additional insured because the underlying policy required the defendant to have entered into a written contract with the insured in order for additional insured status to attach.[3] *Id.* at 399. At the time of the loss, the parties only had an oral agreement in place. *Id.* at 397. The court found an interpretation triggering coverage at the time of the oral promise would render the phrase "under a written contract" meaningless in light of the policy as a whole. *Id.* at 399. The court explained:

> Here, there was no promise under a written agreement at the time of the accident, and no other documentation confirming additional insured coverage at the time of the accident. Even the original draft agreement between [the parties], dated after the accident, did not provide for additional insured coverage, and the subsequent addendum adding that requirement was not executed until five months after the Gateway employee was injured. A certificate of insurance was not issued until March 1990, two months after the accident. Under these circumstances, there is no coverage.

*Id.* at 400.

*Cincinnati v. Gateway* is clearly distinguishable from this case. First, the endorsement language at issue there only required a written agreement; there was no mention of certificates of

---

[3] The policy endorsement provided in pertinent part: "[T]he following are Additional Insureds under this policy: All corporations, partnership[s] and or/[*sic*] affiliated individuals promised to be added as additional insured[s] under a written contract with the Named Insured." *Id.* at 399.

5

insurance, their impact on an insurance policy, or the relevance of certificate issuance dates. *Id.* at 398-99. Second, the parties original written agreement, dated after the accident, did not provide for additional insured coverage. *Id.* at 397, 399. The court found the subcontractor's interpretation allowing the parties to reduce an oral agreement to writing after a loss "could lead to collusion by the parties to create coverage by manufacturing an oral promise after the injury occurs." *Id.* at 400. The court looked for other evidence to support the alleged contractual intent for additional insured coverage prior to the loss, but did not find any. *Id*. at 399-400. It was for these reasons coverage was denied. *Id.* at 400.

Here, defendants contracted in writing with Eckland, the insured, for additional insured coverage years before the scaffolding incident occurred. Additionally, certificates of insurance were issued to the defendants under the 2002-2003 policy, on March 15, 2002 and April 9, 2002. Those certificates expressly name defendants as additional insureds under the 2002-2003 policy and plainly re-stated the full effective period of that policy. Further, the issued certificates were covered with comprehensive disclaimers, plainly stating that they were issued "as a matter of information only," subject to "all the terms, exclusions and conditions" of the cited policy, conferring "no rights upon the

certificate holder," acknowledging that they did not "amend, extend or alter the coverage afforded" by the policy.

Certificates of insurance with disclaimers like these are "evidence of insurance coverage, and not [] separate and distinct contract[s] for insurance or part of the insurance contract." 43 AM. JUR. 2D INSURANCE § 189 (2008); *see also T.H.E. Ins. Co. v. City of Alton*, 227 F.3d 802 (7th Cir. 2000)(stating where a certificate contains a disclaimer, the underlying policy determines extent and terms of coverage - not the certificate); *W. Am. Ins. Co. v. J.R. Const. Co.*, 777 N.E.2d 610, 615 (Ill.App. 2002)(considering certificate to be evidence in support of contractual commitment to insure where no written contract was in place despite written contract requirement in endorsement); *ATOFINA Petrochemicals, Inc. v. Cont'l Cas. Co.*, 185 S.W.3d 440 (Tex. 2005)(noting that certificate issuance does not impact an insurance policy, finding policy requirement that a certificate "has been issued" did not require issuance prior to incident)*; Windham Env. Corp. v. U.S. Fid. and Guar. Co.*, No. 06-CV-367-JM, 2008 WL 4534086 (D.N.H. Sept. 29, 2008)(requiring a certificate issue during the policy year, but not suggesting the certificate issue date must pre-date claimed incidents); *B.T.R. E. Greenbush v. Gen. Accident Co.,* 206 A.D.2d 791, 792-93 (N.Y. App. Div. 1994)(finding post-incident issuance of certificate did not alter the policy term for additional insureds to the issue date of the certificate); *Dryden Cent. Sch. Dist. v.*

7

*Dryden Aquatic Racing Team*, 195 A.D.2d 790, 793 (N.Y. App. Div. 1993)(finding for a claims-based policy "the fact that the certificate of insurance is dated [after the incident] did not alter the clear effective dates and policy period specified in the policy and certificate of insurance").

Plaintiff's suggested interpretation of the endorsement effectively creates a different policy term each year, modifying the core policy term for each additional insured based on certificates that expressly disclaim all modifications. As a result, similarly situated parties like the defendants would receive disparate and incomplete coverage. For example, HOA requested a certificate on March 11, 2002, but its certificate did not issue until April 9, 2002. Shorenstein also requested a certificate after the March 9, 2002 incident, yet its certificate issued much earlier – on March 15, 2002. Under plaintiff's interpretation of the endorsement, HOA's coverage would not start for several weeks after Shorenstein's, even though the same written contract provided that both Shorenstein and HOA would receive additional insured coverage for the same project, under the same policy.

Clearly, plaintiff's reading of the endorsement is unreasonable and unduly limiting. The certificates of insurance did not have to issue prior to the March 9, 2002 incident for defendants additional insured status to attach.

IV.

For the reasons discussed above, plaintiff's motion is denied. The parties' remaining arguments are moot.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated:   December 8, 2008