# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | Nan R. Nolan |
|---|---|---|---|
| **CASE NUMBER** | 07 C 3179 | **DATE** | 11/18/2010 |
| **CASE TITLE** | United States Fidelity And Guaranty Company vs. Shorenstein Realty Services, LP et al | | |

**DOCKET ENTRY TEXT**

For the reasons explained below, AMICO's Motion to Modify Confidentiality Order [279] is denied.

■[ For further details see text below.]   Notices mailed by Judicial staff.

## STATEMENT

In this diversity declaratory judgment action, Plaintiff United States Fidelity & Guaranty Company ("USF&G") sought a declaration that it owes no coverage to Defendants Shorenstein Realty Services, L.P., Shorenstein Management, Inc., Shorenstein Company, LLC, SRI Michigan Avenue Ventures, LLC, SRI Michigan Avenue Management, Inc. (collectively, "Shorenstein") and 175 East Delaware Place Homeowners' Association ("HOA") for lawsuits arising from a scaffold that fell from the John Hancock Center in March 2002.  Shorenstein and their excess insurer National Union Fire Insurance Company of Pittsburgh, PA ("National Union"), and HOA and its insurer Mt. Hawley Insurance Company ("Mt. Hawley"), counterclaimed against USF&G for the amounts that National Union and Mt. Hawley spent in settling the underlying lawsuits and that Mt. Hawley spending in defending HOA, as well as Section 155 damages.  Shorenstein and National Union also filed a third-party complaint against American Motorists Insurance Company ("AMICO") for the same relief.  The district court granted summary judgment in favor of Shorenstein and National Union, finding that Shorenstein is covered under both the USF&G and the AMICO policies.  The district court also held that USF&G does not owe any defense or indemnity payments to Mt. Hawley.  The parties are now in the damages phase of this litigation to determine what damages, if any, are owed to Shorenstein and National Union.

In 2008, the parties to this litigation entered into a Confidentiality Agreement, which provides that confidential material shall be used only for purposes of this matter and that such documents or information shall only be disclosed to certain categories of persons associated with the litigation.  It does not appear that the district judge or magistrate judge signed and entered the Confidentiality Agreement.  If the parties are unable to agree on whether or on what terms certain documents, things, or information should be designated as confidential, the Confidentiality Agreement gives the court the discretion to resolve "whether or on what terms certain documents, things or information should be

designated as 'Confidential Material.'" (Doc. 281, Exh. A, ¶ 8).

Pursuant to the Confidentiality Agreement, AIG/Shorenstein designated certain documents produced to AMICO in discovery "confidential." AMICO and the Shorenstein entities that are parties here are involved in related litigation which was originally filed in state court and pursuant to a motion to compel arbitration is presently pending in arbitration before the Honorable James Henry (retired). AMICO now moves to modify the Confidentiality Agreement to permit its use of confidential documents produced in this litigation in the arbitration proceeding. AMICO contends that it is necessary to modify the Confidentiality Agreement to allow it use AIG/Shorenstein documents already in its possession to "rebut misleading representations made to the arbitrator concerning discovery" and specifically "to rebut factual misrepresentations made in opposition to AMICO's motion to compel in the arbitration." (Doc. 279, at 3, 4). AMICO indicates that it is interested in using "documents written by upper level excess carriers' lawyers before the time they began to represent Shorenstein." (Doc. 279, at 3). AMICO says it will continue to treat the materials provided by AIG/Shorenstein as "confidential" and will secure the agreement of the other parties to the pending arbitration to treat the material as confidential information.

Shorenstein and National Union respond by explaining that the Confidentiality Agreement greatly facilitated the exchange of documents in this coverage litigation, and it was in reliance on the terms of the Confidentiality Agreement that the parties willingly exchanged a volume of sensitive written material. Shorenstein and National Union object to modifying the Confidentiality Agreement because AMICO has not given them adequate notice of the specific documents, things, or information as to which AMICO seeks to modify the Confidentiality Agreement to use in the pending arbitration. Shorenstein and National Union say that given the sheer volume of discovery in this case, AMICO's request to modify the Confidentiality Agreement is overbroad and incompatible with the express terms and very purpose of the Confidentiality Agreement. Shorenstein and National Union contend that they cannot determine what interests they might have in withholding documents from the parties in the state court action and pending arbitration proceeding without AMICO reasonably identifying the documents at stake.

Shorenstein and National Union state that they may have legitimate interests in withholding certain documents from the other carriers in the state court proceeding– Royal Surplus Insurance Company, Burlington Insurance Company, and United National Insurance Company (who are not parties to this action)–even while disclosing them to USF&G and AMICO. On August 4, 2010, the parties to this litigation entered into a Non-Waiver Agreement allowing USF&G and AMICO to review documents from National Union's claim file privilege log, pursuant to this Court's Orders of July 19, 2010 (Docs. 26, 267) and August 3, 2010 (Doc. 269) for the limited purpose of selecting documents for *in camera* review to determine whether National Union was justified in its assertion of privilege over those documents. After USF&G and AMICO reviewed National Union's privileged documents, National Union and AMICO negotiated for the release of a number of those documents to AMICO, as National Union knew those documents would be at all times subject to the Confidentiality Agreement and limited to use within this litigation. Shorenstein and National Union point out that as to documents that AMICO reviewed but that National Union properly refused to produce, AMICO's proposed stipulation is devoid of assurances concerning its consent to the terms of the Non-Waiver Agreement, which prevent it from relying in any way on its review or knowledge of those privileged documents, whether in this litigation or in another proceeding. National Union is not a party to the state court action or pending arbitration and strenuously opposes the use of the contents of its entire claim file (privileged and unprivileged documents) in the state court litigation and pending arbitration to which

|**STATEMENT**|
|---|
|it is a stranger.

     AMICO seeks modification of the Confidentiality Agreement, so that it can use discovery designated as confidential in this action in the pending arbitration. The problem with AMICO's request is that it has not demonstrated that it could eventually obtain in the pending arbitration the confidential information produced in the course of this litigation. Contrary to AMCIO's assertion that the "discoverability" of the confidential documents in the pending arbitration is not an issue before this court, AMICO must initially demonstrate that the confidential material produced in this action which is seeks to use in the pending arbitration is relevant to an issue pending before the arbitrator and eventually discoverable in the pending arbitration. See <u>Jepson, Inc. v. Makita Electric Works, Ltd.</u>, 30 F.3d 854, 861 (7th Cir. 1994); <u>Grove Fresh Distributors Inc. v. Everfresh Juice Co.</u>, 24 F.3d 893, 896 (7th Cir. 1994). AMICO has no right to use or disclose confidential discovery materials reviewed or produced in this action that are privileged or otherwise immune from eventual discovery in the pending arbitration. A modification of the Confidentiality Agreement may not be used to circumvent limitations imposed on discovery in the arbitration proceedings. AMICO has said only that the arbitration is "related." Moreover, discovery is often severely limited or unavailable in arbitration and AMICO has not explained the discovery rules applicable to the pending arbitration. If the court were persuaded that the confidential material produced in this action which AMICO seeks to use would be relevant and eventually discoverable in the pending arbitration, it would be willing to consider modifying the Confidentiality Agreement to avoid the time and expense of duplicate discovery in the arbitration proceeding. If there are legitimate secrecy concerns, the Confidentiality Agreement could be modified to include the parties to the pending arbitration. Because AMICO has not shown that the discovery marked confidential in this action which is already in its possession is eventually discoverable in the arbitration proceeding, its motion to modify the confidentiality agreement is denied.|