IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES FIDELITY AND GUARANTY COMPANY, <br>      Plaintiff, <br> v. <br><br> SHORENSTEIN REALTY SERVICES, L.P.; <br> SHORENSTEIN MANAGEMENT, INC.; <br> SHORENSTEIN COMPANY, LLC; <br> SRI MICHIGAN AVENUE VENTURE, LLC; <br> SRI MICHIGAN AVENUE MANAGEMENT, INC.; <br> 175 EAST DELAWARE PLACE HOMEOWNERS ASSOCIATION; and NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, <br><br>      Defendants. | No. 07 C 3179 <br><br> Judge Bucklo <br><br> Magistrate Judge Nolan |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; <br> SRI MICHIGAN AVENUE VENTURE, LLC; <br> SHORENSTEIN REALTY SERVICES, L.P.; <br> SHORENSTEIN MANAGEMENT, INC.; <br> SRI MICHIGAN AVENUE MANAGEMENT, INC.; <br> and SHORENSTEIN COMPANY, LLC, <br><br>      Defendants/Counter-Plaintiffs, <br> v. <br><br> UNITED STATES FIDELITY & GUARANTY COMPANY, <br>      Plaintiff/Counter-Defendant. | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA; <br> SRI MICHIGAN AVENUE VENTURE, LLC; <br> SHORENSTEIN REALTY SERVICES, L.P.; <br> SHORENSTEIN MANAGEMENT, INC.; <br> SRI MICHIGAN AVENUE MANAGEMENT, INC.; <br> and SHORENSTEIN COMPANY, LLC, <br><br>      Defendants/Third Party Plaintiffs, <br> v. <br><br> AMERICAN MOTORISTS INSURANCE COMPANY, <br><br>      Third Party Defendant. | |

# SHORENSTEIN AND NATIONAL UNION'S MOTION FOR SUMMARY JUDGMENT ON DAMAGES

NOW COME the Defendants/Third-Party Plaintiffs, National Union Fire Insurance Company of Pittsburgh, PA (hereinafter "National Union"); SRI Michigan Avenue Venture, LLC; SRI Michigan Avenue Management, Inc.; Shorenstein Realty Services, L.P.; Shorenstein Management, Inc.; and Shorenstein Company, LLC (collectively "Shorenstein"), by and through their attorneys, Thomas B. Underwood, Michael D. Sanders, and Richard J. VanSwol, and respectfully move this Honorable Court to enter an Order granting summary judgment on damages issues in their favor and against United States Fidelity & Guaranty Company ("USF&G") and American Motorists Insurance Company ("AMICO") pursuant to Federal Rule of Civil Procedure 56. In support of their Motion for Summary Judgment, National Union and Shorenstein submit a Memorandum of Law filed herewith and state as follows:

The facts of this case have been previously summarized not only by the parties but by the Court's memorandum opinions and orders, including those of December 8, 2008 (Doc. 141), *U.S. Fid. & Guar. Co. v. Shorenstein Realty Servs., L.P.*, 591 F.Supp.2d 966 (N.D.Ill. 2008); March 25, 2010 (Doc. 232), 700 F.Supp.2d 1003 (N.D.Ill. 2010), modified April 12, 2010 (Doc. 239); and July 19, 2010 (Doc. 267). This Motion will therefore provide only a brief summary of those facts as needed to support its arguments and to introduce defined terms. This action arose from the efforts of United States Fidelity & Guaranty Company ("USF&G") and American Motorists Insurance Company ("AMICO") to avoid their contractual obligations to indemnify Shorenstein as co-owner of the John Hancock Center in Chicago, Illinois ("the Hancock Center"), for the numerous lawsuits filed in the Circuit Court of Cook County concerning a tragic accident that occurred at the Hancock Center on March 9, 2002 ("the Underlying

Lawsuits"). 700 F.Supp.2d at 1004–05. (Doc. 232 at 2–3.) The seriousness of the case was shown by the combined plaintiffs' opening demand of over $200 million. (Doc. 267 at 12.)

This accident happened in connection with a project for which Shorenstein had retained Eckland Consultants, Inc. ("Eckland"), who held a Business Foundation Policy from USF&G with primary and umbrella liability coverage parts ("the USF&G Policy"). 700 F.Supp.2d at 1006–07. (Doc. 232 at 6–7.) The USF&G Policy had primary limits of $1 million and excess limits of $5 million. (SUF ¶ 1.) On the same project, Shorenstein retained McGinnis Chen & Associates, LLP ("MCA"), which was insured by AMICO under a Premier Businessowners Policy ("the AMICO Primary Policy") and a Commercial Catastrophe Policy ("the AMICO Excess Policy") (together, "the AMICO Policies"). 700 F.Supp.2d at 1020. (Doc. 232 at 36.) The AMICO Policies also had primary limits of $1 million and excess limits of $5 million. (SUF ¶¶ 2–3.) In its contracts, Shorenstein required that Eckland and MCA procure coverage for Shorenstein as an additional insured. 700 F.Supp.2d at 1007, 1020. (Doc. 232 at 7, 36.) Shorenstein itself held coverage that included a Commercial Umbrella policy from National Union (SUF ¶ 37, Doc. 62 at 49) above a $1 million policy from Hartford (SUF ¶ 36).

AMICO agreed to defend Shorenstein in the Underlying Lawsuits but then reversed its course and refused to indemnify Shorenstein as its policy terms required. 700 F.Supp.2d at 1021. (Doc. 232 at 37.) USF&G refused to defend or indemnify Shorenstein as its policy terms required. 700 F.Supp.2d at 1008. (Doc. 232 at 9.) In light of the refusals of AMICO and USF&G to indemnify Shorenstein, National Union paid $7,678,928.10 toward the settlement of the Underlying Lawsuits in order to extinguish Shorenstein's liability. (Doc. 267 at 5; SUF ¶ 29.) *See also* 700 F.Supp.2d at 1005. (Doc. 232 at 3.)

This lawsuit followed, and based on the language of those contracts and the USF&G Policy and AMICO Policies, this Court has held that Shorenstein was an additional insured under those policies. 700 F.Supp.2d at 1005. (Doc. 232 at 2–3.) This Court has also held that the USF&G Policy and AMICO Policies obligated USF&G and AMICO to defend and indemnify Shorenstein in the Underlying Lawsuits. 700 F.Supp.2d at 1015, 1022. (Doc. 232 at 25, 41.)

Pursuant to this Court's minute order of March 10, 2009 (Doc. 148), granting the parties' Joint Motion to Amend Discovery Schedule to Allow for Phasing of the Remaining Litigation (Doc. 146), the parties have completed damages discovery before Magistrate Judge Nolan, and Shorenstein and National Union now move for summary judgment on the amount of damages to which they are entitled, in accord with this Court's Order of November 3, 2010. (Doc. 282.)

National Union is equitably subrogated to Shorenstein's rights against USF&G and AMICO because (1) USF&G and AMICO were primarily liable to Shorenstein for the Underlying Lawsuits under their respective policies; (2) National Union was secondarily liable for the same loss under its policy; and (3) National Union discharged its liability to Shorenstein and at the same time extinguished the liability of USF&G and AMICO. *Chi. Hosp. Risk Pooling Program v. Ill. State Med. Inter-Ins. Exch.*, 397 Ill.App.3d 512, 525, 339 Ill.Dec. 95, 107, 925 N.E.2d 1216, 1228 (1st Dist. 2010) (citing *Home Ins. Co. v. Cincinnati Ins. Co.*, 213 Ill.2d 307, 316–17, 290 Ill.Dec. 218, 229, 821 N.E.2d 269, 280 (2004)).

Because there was coverage under the primary coverages issued by USF&G and AMICO, the principles of horizontal exhaustion require the payment by USF&G and AMICO of their full primary policy limits on Shorenstein's behalf before Shorenstein had to seek coverage under any excess policies available to it. *See Kajima Constr. Servs., Inc. v. St. Paul Fire & Marine Ins. Co.*, 227 Ill.2d 102, 316 Ill.Dec. 238, 879 N.E.2d 305 (2007). National Union is

4

therefore equitably subrogated to the primary limits of $1 million from each of USF&G and AMICO.

Targeted tender allows a party who is covered under multiple policies at the same level to seek coverage exclusively from certain policies of its choice. *Id.* When the value of a case exceeds the combined limits of the primary policies available, the insured can repeat the process at each level of excess coverage. *See N. River Ins. Co. v. Grinnell Mut. Reinsurance Co.*, 369 Ill.App.3d 563, 307 Ill.Dec. 806, 860 N.E.2d 460 (1st Dist. 2006).

Shorenstein's own primary carrier, Hartford, paid its remaining policy limits toward settlement of the Underlying Lawsuits. (*See* SUF ¶ 31, Ex. 26; *see also* SUF ¶ 36.) After the primary policies were exhausted, Shorenstein was entitled to target the first-level excess coverage of the USF&G Policy and the AMICO Excess Policy ahead of any other excess policies, including its own policy from National Union. *N. River*, 369 Ill.App.3d 563, 307 Ill.Dec. 806, 860 N.E.2d 460. However, USF&G and AMICO again paid nothing, while National Union paid $7,678,928.10 to extinguish Shorenstein's liability. (SUF ¶ 29.) Shorenstein made repeated "targeted tenders" against the USF&G Policy and AMICO Policies pursuant to Illinois case law including *Institute of London Underwriters v. Hartford Fire Insurance Co.*, 234 Ill.App.3d 70, 175 Ill.Dec. 297, 599 N.E.2d 1311 (1st Dist. 1992); *John Burns Construction Co. v. Indiana Insurance Co.*, 189 Ill.2d 570, 244 Ill.Dec. 912, 727 N.E.2d 211 (2000); *Richard Marker Associates v. Pekin Insurance Co.*, 318 Ill.App.3d 1137, 252 Ill.Dec. 922, 743 N.E.2d 1078 (2d Dist. 2001); *North River*; *Kajima*; and *Statewide Insurance Co. v. Houston General Insurance Co.*, 397 Ill.App.3d 410, 336 Ill.Dec. 402, 920 N.E.2d 611 (1st Dist. 2009). (*See, e.g.,* SUF ¶¶ 7, 8, 12, 32, Ex. 2, 3, 7, 27.) National Union is therefore

equitably subrogated to USF&G's and AMICO's excess coverages, with limits of $5 million each.

Shorenstein's contracts with Eckland and MCA required that Eckland and MCA's commercial general liability and umbrella liability policies, on which Shorenstein was an additional insured, would be primary to the liability insurance carried by Shorenstein. Therefore, even in the absence of such targeted tenders, the language of Shorenstein's contracts with Eckland and MCA, as well as the language of the USF&G Policy and AMICO Policies themselves, would have obligated USF&G and AMICO to pay before National Union at the same level of excess coverage.

USF&G and AMICO have attempted to deny their responsibility for the full settlement amount paid by National Union on Shorenstein's behalf by claiming that some indeterminate portion of the settlement was paid on behalf of Shorenstein entities other than those which USF&G and AMICO were obligated to defend and indemnify. However, the undisputed factual record shows that the plaintiffs in the Underlying Lawsuit first agreed with Shorenstein on the total amount that it would take to settle out any and all Shorenstein entities, and then allowed Shorenstein to fill in as many entities' names on the release as Shorenstein saw fit. The only entities with any real prospect of liability otherwise would have been SRI Michigan Avenue Venture, LLC, as the owner of the commercial portion of the Hancock Center, and Shorenstein Realty Services, L.P., as the agent and property manager. USF&G and AMICO admit that both of those entities are additional insureds, and they are therefore liable for the full amount of the settlement payment that National Union made.

Because National Union paid a determinable amount for which USF&G and AMICO were primarily liable, it is entitled to prejudgment interest on that amount of $7,678,928.10 at the

statutory rate of 5% under 815 ILCS 205/2. *See, e.g., New Hampshire Ins. Co. v. Hanover Ins. Co.*, 296 Ill.App.3d 701, 231 Ill.Dec. 293, 696 N.E.2d 22 (1st Dist. 1998). That interest has been accruing since at least May 11, 2006, when National Union issued the second of two checks adding to this amount. The interest totals $1,752,478.66 as of December 3, 2010, and will continue to accrue at roughly $1,051.91 per day until this Court enters its judgment.

**WHEREFORE**, for the reasons stated in this Motion and their supporting Memorandum of Law, National Union and Shorenstein pray that this Court enter an Order granting summary judgment in their favor pursuant to Federal Rule of Civil Procedure 56, and awarding them a money judgment against USF&G of $6,000,000 plus prejudgment interest of $1,752,478.66 through December 3, 2010, and $1,051.91 per day until the Court enters its judgment, and a money judgment against AMICO of $6,000,000 plus prejudgment interest of $1,752,478.66 through December 3, 2010, and $1,051.91 per day until the Court enters its judgment, along with such other and further relief as this Court deems appropriate and just.

Respectfully submitted:

/s/ Thomas B. Underwood
Thomas B. Underwood
One of the Attorneys for Defendants,
National Union Fire Insurance Company of Pittsburgh, Pa.; SRI Michigan Avenue Venture, LLC; Shorenstein Realty Services, L.P.; Shorenstein Management, Inc.; SRI Michigan Avenue Management, Inc.; and Shorenstein Company, LLC.

PURCELL & WARDROPE, CHTD.
10 S. LaSalle Street, Suite 1200
Chicago, IL 60603
(312) 427-3900
F:\TBU PUBLIC\2631 USF&G\Pleadings\Shorenstein_MSJ_Damages\MSJ_Damages.doc